UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| PAUL G. MORALL, | ) | Civil Action No.: 4:20-cv-00253-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits (DIB).  The only issues

before the Court are whether the findings of fact are supported by substantial evidence and whether

proper legal standards have been applied.  This action is proceeding before the undersigned by

voluntary consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for DIB on May 4, 2016, alleging inability to work since

February 1, 2013.  (Tr. 15).  His claims were denied initially and upon reconsideration.  Thereafter,

Plaintiff filed a request for a hearing. Plaintiff amended his alleged onset date to July 31, 2016. (Tr.

15).  A hearing was held on June 19, 2018, at which time Plaintiff testified.  The Administrative Law

Judge (ALJ) issued an unfavorable decision on January 16, 2019, finding that Plaintiff was not

disabled within the meaning of the Act.  (Tr. 15-23)  Plaintiff filed a request for review of the ALJ's

decision, which the Appeals Council denied on December 5, 2019, making the ALJ's decision the

Commissioner's final decision. (Tr.1-4). Plaintiff filed this action on January 27, 2020. (ECF No. 1).

**B.    Plaintiff's Background and Medical History**

    **1.    Introductory Facts**

Plaintiff was born on July 31, 1966 and was fifty years old at the time of the alleged onset. (Tr. 22). Plaintiff had a limited education and past relevant work experience as a mechanic. (Tr. 22). Plaintiff alleges disability originally due to lower back injury/ruptured disc, high blood pressure, and degenerative disc disease. (Tr. 58).

    **2.    Medical Records and Opinions**

<u>**2016**</u>

A June 2016 MRI, before the amended alleged onset date, showed no significant changes since a 2013 MRI, no acute abnormality or high-grade stenosis, stable L5 superior endplate Schmorl's node, disc bulges/desiccation at L3-L5, and mild foraminal narrowings. (Tr. 461).

On August 9, 2016, Dr. Heldrich, M.D., a non-examining state agency consultant, found a medium RFC. (Tr. 62). The same was found by Dr. Burger on reconsideration in January 2017. (Tr. 78).

On September 24, 2016, Plaintiff was seen at the hospital for accelerated hypertension and chest pain. (Tr. 470). The next day blood pressure was 206/128. (Tr. 471). Upon exam, Plaintiff had full range of motion, normal gait, and no tenderness. (Tr. 472). Plaintiff had not been taking any medication. Plaintiff had blurry vision with blood pressure of 270/166. (Tr. 474). EKG showed NSR with rate of 77 with LAD but no ischemic changes. (Tr. 74). Nuclear medicine stress test was negative. (Tr. 474). Imaging showed stable cardiomegaly and no acute cardiopulmonary disease. (Tr.

494).

On September 28, 2016, Plaintiff was seen by PA Dove of Summerville Health for hypertension and GERD. (Tr. 515). Plaintiff was negative for chest pain and fatigue and positive for heartburn. (Tr. 516). Exam was normal. (Tr. 517). Assessment included acute right sided low back pain with sciatica. (Tr. 517).

On November 7, 2016, Plaintiff's girlfriend completed a third party function report. (Tr. 257). She reported he could not walk for long. His back locks up. (Tr. 250). She helps him dress and sometimes with showers. (Tr. 251). Plaintiff does not do yard work or chores but can fold clothes. (Tr. 252). Plaintiff drives but cannot sit down long without his back locking up. (Tr. 253). Plaintiff uses a cane not prescribed by a doctor. (Tr. 255). Plaintiff cannot lift over twenty pounds. Plaintiff can walk one block. (Tr. 256).

On November 15, 2016, Plaintiff was seen by PA Dove. (Tr. 511). Hypertension was improving. Plaintiff was compliant with medication. (Tr. 511). Plaintiff was negative for fatigue and chest pain. (Tr. 512). Exam was normal. (Tr. 513). Plaintiff was instructed to follow a low sodium diet, increase activity, and stop smoking. (Tr. 513).

On November 23, 2016, Plaintiff completed a function report. Plaintiff reported cutting grass using a riding mower. (Tr. 261). Plaintiff has only been to car shows twice in the last three years. (Tr. 263). Plaintiff reported being able to walk 100 yards. (Tr. 264).

**2017**

In January 2017, Plaintiff reported to mental health that he had chronic pain only at a level three and only took medication for high blood pressure. (Tr. 544). Gait was normal. (Tr. 550).

On April 3, 2017, Plaintiff was admitted to the hospital for three days. (Tr. 540). Plaintiff

3

presented with an anterior myocardial infarction with emergent cardiac catheterization revealing a totally occluded LAD. EF was 35-40%. (Tr. 540). Plaintiff had severe hypertension which required additional multiple medications for control. (Tr. 540).

On April 21, 2017, Plaintiff was seen by Dr. Kennedy of Trident Cardiology. (Tr. 561). Plaintiff reported some fatigue, some mixed feature chest discomfort(improved with deep breathing), and improved frequent substernal chest discomfort. (Tr. 562). Exam was normal. (Tr. 562). EKG showed sinus rhythm involving extensive anterolateral myocardial infarction with Q-waves V1 through V6 and inferior infarction by Q-waves. (Tr. 562).

On June 29, 2017, Plaintiff was seen by Dr. Kennedy. (Tr. 559). Blood pressure was 139/99 and 62bpm pulse. (Tr. 559). Plaintiff reported some palpitations from time to time and continues to have the same atypical rare chest "throbbing" that he had at the prior visit that does not change but occurs with exertion. (Tr. 560). A Holter monitor was ordered. (Tr. 560).

On July 12, 2017, Plaintiff was seen by Dr. Kennedy. (Tr. 557). Blood pressure was 158/98 with 60bpm pulse. Plaintiff complained of dyspnea on exertion with walking short distances and performing activities of daily living. "He meets criteria for [NYHA] class III heart failure. He has persistent cough, worse with lying down and improved with sitting up, and also exertional cough. At his last visit, we thought this was related to lisinopril, which he had been on for many years, but he could not afford the generic ARB. He is having some tightness in his chest, but it appears more related to dyspnea than anything." (Tr. 558). Assessment/plan was "severe ischemic cardiomyopathy, [NYHA] class III. The patient walked on the treadmill today for 4 minutes and 30 seconds. No EKG changes. He was limited by severe dyspnea. No arrhythmia or EKG changes noted." Plaintiff had not had any palpitations for two weeks. His Holter monitor revealed short runs of SVT and an atrial

4

flutter for 9 beats and some morning bradycardia but no other significant arrhythmia. (Tr. 558, 606). Medications were continued. (Tr. 558). With exercise test, blood pressure rose to 280/140. (Tr. 567). Overall impression was inconclusive due to submaximal stress test. (Tr. 567).

On October 4, 2017, Plaintiff was seen by Dr. Kennedy. (Tr. 555). Blood pressure was 144/110. Pulse was 53 bpm. History noted: "He has [NYHA] class III heart failure. He has had intermittent short episodes of angina, which resolved without nitroglycerin. His blood pressure has been consistently elevated." (Tr. 556). Upon exam, Plaintiff was in no acute distress. Basic cardio exam was normal. Under assessment/plan, "[h]e is having mild episodes of angina. I think controlling blood pressure should help." An echocardiogram at cost was ordered. (Tr. 556).

On October 27, 2017, echo showed normal LV systolic function and normal left ventricular wall motion. (Tr. 565). EF was 56%. (Tr. 565).

**2018**

On January 15, 2018, Plaintiff was seen by Dr. Kennedy. (Tr. 731). Plaintiff had two echos showing EF greater than 55%. "Since his last visit, he was having some chest discomfort, which has significantly resolved. He can walk about one-fourth of a mile now without having to stop. He is not having any active angina. (Tr. 732). Exam was normal. Medications were continued and EF had improved significantly. Follow up was to be in six months. (Tr. 732).

On June 12, 2018, Plaintiff was seen by Dr. Kennedy. (Tr. 728). Blood pressure was 158/102 with a 61bpm pulse. Plaintiff's EF had rebounded and two echos now had shown EF greater than 55%. Plaintiff complained of some chest tightness in past few months increasing, where a knot in his chest lasts a few seconds and then subsides and occurs with or without exertion. Plaintiff noted a few palpitations but only once every three months. (Tr. 729). Exam was normal. (Tr. 729).

Nuclear stress test was to be repeated. On June 13, 2018, Dr. Kennedy submitted a "to whom it may concern" statement:

> Mr. Morrall is under my care for coronary artery disease, paroxysmal atrial flutter and ischemic cardiomyopathy. He can not perform manual labor in uncontrolled temperature environment. He has NYHA Class Ill heart failure symptoms. He cannot lift over 30Ibs, stand longer than 1 hour or walk more than 15 minutes.

(Tr. 734).

## C.    The Administrative Proceedings

### 1.    The Administrative Hearing

#### a.    Plaintiff's Testimony

On June 19, 2018, Plaintiff appeared at a hearing before ALJ Edward T. Morriss. Plaintiff was represented by an attorney. (Tr. 29). No vocational expert testified.

Plaintiff testified he could not work due to the physical demand of lifting/bending and constant walking. Plaintiff testified his lower back and pain into his legs is what is aggravated by such activities. (Tr. 33). Plaintiff testified after surgery and release from a doctor in 2014 he cannot turn his neck fully. (Tr. 34). Plaintiff feels discomfort in his low back walking less than an eighth of a mile. (Tr. 34-35). Plaintiff testified to only a pain level of two every day. Plaintiff stated he carries a cane. Plaintiff can stand up to 10 minutes before his left leg starts burning above his knee. (Tr. 35). After 20 minutes, reaching overhead starts to bother him. (Tr. 36). Plaintiff had chest pains in September 2016 and a stent in April 2017 with a history of high blood pressure. (Tr. 36). Plaintiff testified now he takes his medications every day. (Tr. 37-38). Plaintiff testified he cannot do anything in the heat. (Tr. 38). Plaintiff had been seeing Dr. Kennedy since April 2017. (Tr. 38). Plaintiff testified the length between visits gradually extended and is now up to six months. (Tr. 39).

6

Plaintiff gets out of breath walking more than 15 minutes. (Tr. 40). Plaintiff testified during the day

he sits in the recliner and he walks outside, "just try to keep as mobile as possible as I can." (Tr.

41). Plaintiff testified he had a friend that comes and helps put his shoes on and getting in and out

of the shower. (Tr. 41-42). Plaintiff sleeps two to three hours at a time because his back wakes him.

(Tr. 42-43). Plaintiff takes one to two, 30-45 minute naps a day. (Tr. 43-44). Plaintiff has tingling

in his hands. (Tr. 44). Plaintiff drops things. (Tr. 45). Plaintiff reported his last work in a garage

was in the stifling heat. (Tr. 47). Plaintiff tries to stay as "stressless" as possible. (Tr. 50). Plaintiff

can drive a car but not do laundry. (Tr. 51). The only treatment for his low back was shots in 2000.

(Tr. 51). Plaintiff had no insurance to get again in 2013. (Tr. 51).

### 2.    The ALJ's Decision

In the decision of May 9, 2018, the ALJ made the following findings of fact and conclusions

of law (Tr. 452):

1.    The claimant meets the insured status requirements of the Social Security Act through
      December 31, 2018.

2.    The claimant has not engaged in substantial gainful activity since July 31, 2016, the amended
      alleged onset date (20 CFR 404.1571 *et seq*.).

3.    The claimant has the following severe impairments: degenerative disc disease of the cervical
      spine status post fusion, coronary artery disease status post stent placement, cardiomyopathy,
      and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or
      medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart
      P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual
      functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the
      following limitation. The claimant can climb ladders occasionally.

6.    Claimant is unable to perform past relevant work (20 CFR 404.1520(b)).

7.     The claimant was born on July 31, 1966 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not an issue because a finding of not disabled would be reached whether or not claimant had transferable skills (20 CFR 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2016, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in performing the subjective symptom evaluation. Plaintiff argues the ALJ's RFC determination of light work is unsupported by substantial evidence. Plaintiff argues the ALJ did not support his assigning little weight to Dr. Kennedy's opinion with substantial evidence. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d

10

846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## B.     ANALYSIS

**<u>Subjective Symptom Evaluation</u>**

Plaintiff argues the ALJ erred in the subjective symptom evaluation by misstating evidence of record and by focusing on objective evidence. Plaintiff also contests the ALJ's assignment of little weight to third party lay evidence.

SSR 16-3p is applicable to cases decided after its effective date, such as this case.  *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps.  First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective

complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs*., 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

12

> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c).  The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record."  SSR 16-3p, at *11.

> The ALJ considered Plaintiff's allegations, hearing testimony, and girlfriend's report:
>
> The claimant alleges ongoing joint and back pain (Exhibits 11E; 23E). He is not able to sustain standing, kneeling, or squatting. He can walk about the length of a football field before experiencing shooting pain down his leg. The claimant also cannot use his arms to reach overhead. He also has a history of cardiac conditions with a heart attack in 2017 and has ongoing fatigue and dyspnea. He continues to struggle with climbing stairs. The claimant lives by himself and relies on family and his girlfriend for tasks, including putting on his shoes and cleaning. He is not able to stand for extended periods and sits to do most activities. He naps throughout the day.
>
> His girlfriend Tammy Bryan submitted a third party report generally supporting his allegations (Exhibit 10E).

(Tr. 20). The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent with the evidence in the record. (Tr. 20).  The ALJ then turned to the evidence of record, noting records of back treatment before the amended alleged onset date with no significant treatment within the relevant period. (Tr. 20). The ALJ then considered cardiac records:

> In terms of his cardiovascular symptoms, the record indicates the claimant to have a history of hypertension (Exhibit 5F/13). He reported to the emergency room in September 24, 2016 for persisting chest pain with episodic blurry vision, worsened

by exertion and also accompanied with shortness of breath. The claimant had not taken prescribed medication for over a year. He was found to be severely hypertensive in the emergency room and required medication, though testing was generally normal with normal cardiac enzymes, no ischemic changes on EKG or acute cardiac changes on chest x-ray. The claimant was discharged the next day with advisories to follow up with his primary care provider.

He denied symptoms once he followed up with his primary care provider and was noted to have no notable cardiovascular signs (Exhibit 7F). However, the claimant was taken to the hospital in April 3, 2017 for anterior myocardial infarction (Exhibit 9F/12). He required cardiac catheterization and stent placement after imaging found a totally occluded LAD. His postprocedure ejection fracture was 35% to 40%. He was discharged in April 5, 2017 and was noted to have complicated hypertension.

The record does indicate he was limited on an exercise treadmill test administered in July 2017 following his myocardial infarction because of severe dyspnea (Exhibit 11F/4, 13). However, he was not noted to have arrhythmia or any notable EKG changes. Holter monitor results observed some bradycardia and atrial flutter but no significant other arrhythmia or palpitations (Exhibit 11F/4). Updated imaging in October 27, 2017 found normal left ventricular systolic function (Exhibit 11F/11). Echocardiogram in 2018 found ongoing ejection fraction greater than 55%. While the claimant reported intermittent chest tightening and palpitations, he also indicated general good response to ongoing medication (Exhibit 18F). Evaluations have been limited for notable signs including abnormal sounds or edema (Exhibits 11F/4, 8; 18F).

(Tr. 20-21).

Plaintiff argues it was error for the ALJ to state Plaintiff had not been compliant with medications prior to hospitalizations and with regular medication Plaintiff had improved. (Tr. 22). Plaintiff argues that a valid reason for not complying is finances and cites to transcript pages 474 and 477. However, mental health notes also stated "he stopped his BP med for one year and was hospitalized in Sept. 2016 for it. [He] stated he had given up on life at that time but now is medication compliant." (Tr. 544). This stopping of medication was later reported as a suicide attempt in 2016 by Plaintiff. (Tr. 548). Plaintiff was medication compliant for the majority of the relevant time period before the ALJ and the record shows Plaintiff improved with medication with

objective findings. Substantial evidence supports the ALJ's statements as to medication and improvement. The ALJ noted Plaintiff's EF on the last two echos was greater than 55%; a normal EF is between 55% and 70%. *See Foster v. Colvin*, No. 6:13-cv-926-TMC, 2014 WL 3829016, at *3 n.3 (D.S.C. Aug. 4, 2014); (Tr. 20).

As to Plaintiff's concerns about what the ALJ stated as to the 2014 FCE assessment, the ALJ's assignment of limited weight is supported as such was years before the amended alleged onset date and outside the relevant time period before the ALJ. (ECF No. 19 at 20-21, 26, 29); (Tr. 21).

As to Plaintiff's argument that other factors in the subjective symptom evaluation should have been evaluated, such as intensity of pain, medication, and medication side effects, Plaintiff does not point to support for these factors. Also, Plaintiff did not take pain medication, reported a pain level of three and two, had no significant treatment for back pain during the relevant period before the ALJ, and reported no medication side effects; therefore, the ALJ not discussing all of the SSR 16-3p factors is of no consequence. As to Plaintiff's heart, his EF had objectively improved to normal. (Tr. 21).

Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. The ALJ sufficiently explained how Plaintiff's subjective allegations were not entirely consistent with the evidence. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not entirely consistent with the record.

Lay Statement

After weighing opinions, the ALJ weighed Plaintiff's girlfriend's statement: "Little weight

is given to the third party report of the claimant's girlfriend (Exhibit 10E). While close with the claimant, the source is not an acceptable medical source. Furthermore, the overall record supports greater functionality than alleged, with limited findings of ongoing degenerative changes in the spine and generally conservative treatment for his musculoskeletal conditions and primarily monitoring for his cardiovascular impairments." (Tr. 21-22).

Plaintiff argues the ALJ erred in consideration of Plaintiff's girlfriend's report. The regulations provide that the Social Security Administration will consider any description "nonmedical sources may provide about how the symptoms affect [the plaintiff's] activities of daily living and ... ability to work." 20 C.F.R. § 404.1529(a). The ALJ did consider and weigh such lay testimony here. In other cases, where there was no consideration of lay testimony, it has been found to be harmless error. *See Jenkins v. Saul*, 2020 WL 3848203, at *12 (D.S.C. Jan. 29, 2020), *report and recommendation adopted*, No. 4:18-CV-2240-DCN, 2020 WL 1612442 (D.S.C. Apr. 1, 2020).

Substantial evidence supports the ALJ's weight given to the lay report.

## RFC

Plaintiff argues the ALJ's RFC determination of light work is unsupported by substantial evidence.

An adjudicator is solely responsible for assessing a claimant's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).  In making that assessment, she must consider the functional limitations resulting from the claimant's medically determinable impairments.  Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2.  This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR

96–8, *7.

SSR 96-4p makes evident that the subjective symptom evaluation is to be performed before making the RFC determination because its findings are necessarily included in the RFC determination. Once the first step of the subjective symptom evaluation is surpassed, "allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p. In determining the RFC, Plaintiff's complaints are considered along with all of the other evidence of record, including objective exams. SSR 96-8p. Symptoms are less likely to reduce the RFC where an individual's statements about the limiting effects of symptoms are inconsistent with objective medical evidence and other evidence. SSR 16-3p.

Plaintiff cites to mild imaging as to Plaintiff's back and abnormal sensations as to some of the reasons why Plaintiff cannot perform light work. (ECF No. 19 at 24). Plaintiff again contests the ALJ's factual statement concerning medication as discussed above. Plaintiff argues that Plaintiff's symptoms were not improved by medication; this is despite the record including two recent echos with a normal EF rate as objective evidence, as relied on by the ALJ. (Tr. 21). Plaintiff focuses on an opinion of Class III cardiac symptoms which would require "objective evidence of moderately severe cardiovascular disease"; however, objective evidence showed vast improvement since his hospitalization EF. (ECF No. 19 at 25); (Tr. 21). Within this argument section, Plaintiff also addresses the state agency opinion weight and the 2014 statements already addressed above. Substantial evidence supports the assignment of some weight to the non-examining opinions of a medium RFC where updated evidence supported greater limitations, such as a light exertional level. (Tr. 21).

17

The majority of exams by Plaintiff's treating cardiologist are normal as the ALJ noted. (Tr. 21). The ALJ noted any abnormalities as well as Plaintiff's reports of intermittent chest tightening and palpitations. (Tr. 21). The ALJ noted normal test results and limitation on treadmill test. (Tr. 21).

Subjective complaints are not viewed in a vacuum when an ALJ performs the RFC determination but are viewed within the lens of the prior subjective symptom evaluation finding by the ALJ. Here, the ALJ's finding that Plaintiff's statements concerning the intensity and limiting effects of symptoms were not fully supported or consistent with the record evidence as a whole, is supported by substantial evidence, as discussed above. *See* SSR 96-4p, SSR 96-8p, SSR 16-3p. Symptom reports that are inconsistent with objective medical evidence and other evidence are less likely to reduce the RFC. SSR 16-3p.

The ALJ's decision contains an appropriate discussion of Plaintiff's symptoms/allegations and treatment. There is "more than a mere scintilla" of evidence that supports the ALJ's conclusion not to include further sitting, standing, or walking or any other additional limitations in Plaintiff's RFC. So long as there is substantial evidence in the record to support the ALJ's conclusion, it is not for this court to reweigh the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Based on the evidence in the record and the ALJ's discussion of the evidence, the ALJ's RFC finding is supported by substantial evidence and complies with the Social Security Rules. In sum, the ALJ did not err in explaining his findings with respect to the Plaintiff's RFC.

## Opinions

Plaintiff argues the ALJ did not support his assignment of little weight to Dr. Kennedy's

18

opinion with substantial evidence.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A district court will not disturb an ALJ's determination as to the weight assigned to a medical opinion, including a treating physician's opinion, "absent some indication that the ALJ has dredged up 'specious inconsistencies' ... or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant;

whether the source has a treatment relationship with the claimant and, if so, the length of the

relationship and the frequency of examination; the nature and extent of the treatment relationship;

the supportability and consistency of the source's opinion with respect to all of the evidence of

record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v.*

*Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole

when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*,

76 F.3d at 595.

On June 13, 2018, Dr. Kennedy submitted a "to whom it may concern" statement:

Mr. Morrall is under my care for coronary artery disease, paroxysmal atrial flutter and
ischemic cardiomyopathy. He can not perform manual labor in uncontrolled temperature
environment. He has NYHA Class Ill heart failure symptoms. He cannot lift over 30Ibs,
stand longer than 1 hour or walk more than 15 minutes.

(Tr. 734).

The ALJ assigned little weight to Dr. Kennedy's opinion:

Little weight is given to the treating source opinion of Chris Kennedy, M.D. (Exhibit
19F). In a statement dated June 13, 2018, the source limited the claimant from
manual labor in uncontrolled temperature environments, lifting over 30 pounds,
standing longer than 1 hours, or walking more than 15 minutes. Little weight is given
considering overall treating notes which have observed considerable improvement
in cardiovascular functioning with adherence to treatment (Exhibits 11F; 18F). He
has self-reported improved exertional capacity and has not required further medical
intervention.

(Tr. 21).

The substantial evidence cited by the ALJ is supported by the record exhibits the ALJ cited.

To the extent Plaintiff argues it was error for the ALJ not to note the opinion of Class III and the

prior notes of Class III in October 2017, from the material in Plaintiff's brief, Class III requires

"objective evidence of moderately severe cardiovascular disease." (ECF No. 19 at 19). The ALJ here

noted there were two echos with a normal EF and multiple normal physical cardiac exams. (Tr. 20-21).  The ALJ's finding that Dr. Kennedy's opinion was not supported by his treatment notes is supported by substantial evidence. Plaintiff's assertion that the ALJ's statement of "self-reported improved exertional capacity" comes from evidence in 2014 or 2015 is speculation as the ALJ did not cite such exhibit numbers. (ECF No. 19 at 20). As discussed above, the weight the ALJ assigned to evidence outside of the amended alleged onset date was supported by substantial evidence.

The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision.  Even with some evidence of abnormal findings, the ALJ provided more than a mere scintilla of record support for the weight given to Dr. Kennedy's opinions. It cannot be said  here that the ALJ has not given good reason for the weight afforded to these particular opinions.  *See*  20 CFR § 404.1527(d).   The ALJ's decision to give such opinions such weights was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  The ALJ complied with SSR 96-2p(rescinded for applications after March 27, 2017)[3] in making clear to a subsequent reviewer the weight given and the reasons for that weight. Given the deferential standard of review, the court cannot say that the ALJ here did not provide citation to substantial evidence to support his findings on these opinions.  The ALJ's findings are supported by substantial evidence and the ALJ conducted a proper analysis in accordance with the applicable law, regulations, and policies.

---

[3] The changes to the former 20 C.F.R. § 404.1527, which SSR 96-2p provided guidance on, are not effective to applications prior to March 27, 2017.

## III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence.  *Richardson*, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  *Blalock*, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

<div style="margin-left:50%">

s/ Thomas E. Rogers, III

</div>

February 26, 2021                               Thomas E. Rogers, III
Florence, South Carolina                    United States Magistrate Judge